# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

TSC RESEARCH, LLC,         )
                              )
            Plaintiff,    )
                              )
            v.           )     1:06CV701
                              )
BAYER CHEMICALS CORPORATION AND  )
LANXESS CORPORATION,        )
                              )
            Defendants.   )

## ORDER AND RECOMMENDATION OF MAGISTRATE JUDGE ELIASON

This case is before the Court on Defendants' motion to dismiss Plaintiff's amended complaint pursuant to Fed. R. Civ. P. 12(b)(6). The Court held a hearing on the present motion on March 22, 2007, in which it orally dismissed Counts 2, 4, 5, and 13 of Plaintiff's thirteen-count amended complaint.[1]  The Court also gave Plaintiff 45 days to file a more definite statement as to Counts 9, 10, and 12 of the complaint and 30 days to rebrief Counts 6, 7, and 8. (See Docket No. 33.)  The further statements, briefing, and responses of the parties are now before the Court.

---

[1]Because Counts 2, 4, and 5 all involve contract issues related to the breach of contract claim set forth in Count 3, the Court ruled that the separate counts be dismissed because their issues were subsumed by Count 3.

Count 13 is a "claim and delivery" action demanding the return of "information."  The Court pointed out that "claim and delivery" was an inappropriate means of accomplishing the ends and queried how Plaintiff proposed that "information" be returned to it. The resulting discussion ended with Defendants promising, and the Court directing, Defendants to return certain documents, and the Court dismissing the inappropriate "claim and delivery" action seeking "information."

The Court also notes that Plaintiff's "first claim for relief" simply alleges that Defendant LANXESS is the successor entity to Defendant Bayer. Because this allegation does not constitute a cause of action, it is dismissed as a claim or cause of action.

The facts, in the light most favorable to Plaintiff, are as follows. In early 2003, Plaintiff TSC Research, LLC met with Defendant Bayer Chemicals Corporation ("Bayer") regarding a chemical-based technology developed by Plaintiff. The technology involved the manufacturing of "smart fabrics," which could improve temperature and moisture control for the wearer. The two parties executed a Disclosure Agreement in April 2003, whereby Plaintiff provided enough proprietary information to allow Defendant Bayer to manufacture the requisite chemicals to create "smart fabrics." Shortly thereafter, Plaintiff claims that Defendant Bayer expressed its desire to manufacture and market the technology as a Bayer product, and the two companies executed a "Letter of Intent to Execute the Exclusive Technology Licensing Agreement" (hereinafter "the letter of intent") on October 22, 2003. Bayer's marketing director, Dean Bender ("Bender"), signed the agreement on behalf of Defendant.

The letter of intent explained that the parties desired to execute an attached licensing agreement "pending any necessary final approvals," (emphasis added), and that the parties signed the letter of intent in "good faith." It also contained assurances by Defendant Bayer that it would expedite the approval of the licensing agreement, and that the two parties would proceed as if that agreement had already been approved. Accordingly, the parties met on several occasions to discuss Plaintiff's technology, including during a number of meetings with Defendant's customers. (Compl. ¶ 32-36.) During this time, Defendant Bayer paid Plaintiff

-2-

$30,000 per month as set forth in the unexecuted licensing agreement.

After several uneventful months, events took an abrupt turn when Defendant Bayer decided to reorganize its corporate structure in early 2004. At that time, it transferred its chemical division to a new entity, LANXESS Corporation ("LANXESS"), which is also a named defendant in this action. Plaintiff claims that Bender's resignation from Bayer in March 2004, in the midst of the reorganization, led to even greater confusion over the future of the companies' joint enterprise. It particularly alleges that the new LANXESS officials showed little to no interest in Plaintiff's technology and allowed "the venture between plaintiff TSC and defendant Bayer to 'die on the vine.'" (Compl. ¶ 45.) Despite these changes, the parties "continued discussions and held meetings" regarding Plaintiff's technology as late as June 2004. (Compl. ¶ 39.)

Between July and September of 2004, the parties proceeded with their communications regarding the proposed 15-year licensing agreement. Defendants' legal department allegedly sought "additional assurances and information" from Plaintiff during this period, but neither Bayer nor LANXESS made any further payments to Plaintiff. Meanwhile, Plaintiff claims that Defendants "failed to respond or to provide accurate and timely updates as to the status regarding the execution of the license agreement or the continued pursuit of customers for the TSC Process." (Compl. ¶ 42.) Plaintiff also asserts that its ultimate decision to file suit

-3-

against Defendants on February 22, 2005 came only after "23 face-to-face meetings" between the parties proved unsuccessful. (Compl. ¶ 53.) Nonetheless, Plaintiff and Defendant LANXESS entered a one-year tolling agreement on March 14, 2005 in a further attempt to reach an agreement as to the licensing of Plaintiff's product. However, even after the parties extended the tolling agreement for four additional months, they failed to reach an agreement. Plaintiff claims that Defendants did little, if anything, to advance the future relationship between the companies during the tolling period. On August 22, 2006, soon after tolling expired, Defendants removed this action to federal court on diversity of citizenship grounds. They now seek to dismiss all remaining counts of Plaintiff's amended complaint for failure to state a claim under Fed. R. Civ. P. Rule 12(b)(6).

## Discussion

To survive a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), a plaintiff must first comply with Fed. R. Civ. P. 8(a)(2), which requires "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Bell Atlantic Corp. v. Twombly, __ U.S. __, 127 S. Ct. 1955, 1964 (2007)(quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)).

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements

> of a cause of action will not do. Factual allegations
> must be enough to raise a right to relief above the
> speculative level on the assumption that all the
> allegations in the complaint are true.

Twombly, 127 S. Ct. at 1964-65 (internal citations omitted).
"[O]nce a claim has been stated adequately, it may be supported by
showing any set of facts consistent with the allegations in the
complaint." Id. at 1969. The Court will construe all factual
allegations in the light most favorable to Plaintiff, Republican
Party of North Carolina v. Martin, 980 F.2d 943, 952 (4th Cir.
1992).

Assertions of fraud face a stiffer hurdle and must comply with
the heightened pleading standard of Fed. R. Civ. P. Rule 9(b) as to
those claims. Rule 9(b) requires that "[i]n all averments of fraud
or mistake, the circumstances constituting fraud or mistake shall
be stated with particularity." Thus, a Plaintiff asserting fraud
must identify both the statements alleged to have been misleading
or fraudulent and the reasons such statements were misleading.
These reasons must go beyond a formulaic set of allegations; a
plaintiff must allege sufficient facts to support a reasonable
belief that the defendant's statements were, in fact, misleading.
Teachers' Ret. Sys. v. Hunter, 477 F.3d 162, 174-5 (4th Cir. 2007).
"The primary purpose of Rule 9(b) is to afford defendant fair
notice of the plaintiff's claim and the factual ground upon which
it is based." Ross v. Bolton, 904 F.2d 819, 823 (2d Cir. 1990).

-5-

Count three of the amended complaint, alleging breach of contract as to the signed letter of intent, is the crux of Plaintiff's case. In order to establish breach of contract, Plaintiff must show that the parties had a valid contract, that defendant materially breached the contract, and that Plaintiff suffered damages as a result of the breach. <u>Beck v. Lazard Freres & Co., LLC</u>, 175 F.3d 913, 914 (11th Cir. 1999). In moving for the dismissal of Plaintiff's breach of contract claim, Defendants contend that Plaintiff cannot establish the first of these elements. Specifically, they argue that the letter of intent signed by both parties does not constitute a contract, but an unenforceable agreement to agree.

A contract does not exist where the parties merely negotiate with the anticipation that their agreement will ultimately be memorialized in a later document. <u>Parker v. Glosson</u>, __ N.C. App. __, 641 S.E.2d 735, 737 (2007). Agreements containing an unmet condition precedent are also unenforceable. <u>Id.</u> However, a contract to enter into a future contract may be enforced if it specifies all of the "material and essential terms." <u>Boyce v. McMahan</u>, 285 N.C. 730, 734, 208 S.E.2d 692, 695 (1974).

In the present case, Defendants contend that the signed letter of intent contains a condition precedent which prevents contract formation. That is, Defendants assert the letter of intent is merely an agreement to agree at a later date. The Court disagrees. The letter of intent provides that the parties will "execute the

-6-

attached Exclusive Technology Licensing Agreement pending any necessary final approvals." It is clear that pursuit of the final approvals must be carried out in "good faith." Furthermore, Defendants promised to expedite the final approval. They also agreed to "immediately [] develop the marketing, development and research strategy," and they made payments to Plaintiff under the licensing agreement. Thus, Defendants entered into an executory contract and began performing some of the terms and were required to expedite final approval. The letter of intent memorializes the parties' promise to act in good faith in order to obtain final approval and, in the meantime, to act as if the licensing agreement were finalized.

Defendants rely extensively on <u>Boyce</u> and <u>Parker</u> in urging dismissal. <u>Parker</u> is inapposite because the issue there concerned the failure of all parties to sign the contract. Here, both Plaintiff and Defendants did sign. <u>Boyce</u> does not provide guidance for the instant case because there, the writing clearly defined itself as a desire to enter into a preliminary agreement (as opposed to being an agreement) and was "made expressly subject to a <u>future</u> agreement." <u>Boyce</u>, 22 N.C. App. at 258, 206 S.E.2d at 499 (emphasis added). The letter of intent in the present case presents quite the opposite situation. All the terms are set out, the only remaining matter was obtaining final approval and, in that regard, the parties were required to act in good faith.

The peculiar nature of the letter of intent gives rise to the Court's earlier decision to consolidate the four breach of contract

-7-

claims from the amended complaint into a single count. Notably, Plaintiff's remedies as to the licensing agreement, formerly discussed in Count 4, rely entirely on the success of Plaintiff's contract claim as to the letter of intent. If Defendants breached the contract under the letter of intent, then Plaintiff may also seek damages under the licensing agreement, which would have been executed but for Defendants' breach. Similarly, the presence of an express covenant of good faith and fair dealing in the letter of intent negates the need for an independent claim making such allegations, formerly in Count 5. Finally, Plaintiff's alleged oral contract claim is merely an attempt to flesh out and explain the parties dealings leading up to the signed letter of intent. All of these allegations survive Defendants' motion to dismiss as part of a single breach of contract claim. Defendants' motion to dismiss the contract claim should be denied.

### Quantum Meruit

In Count 6, plaintiff pleads quantum meruit, asserting it rendered technical assistance to Defendants. This claim is ostensibly an alternative to the breach of contract claim. Defendants assert that this pleading is defective in three respects. First, they contend that Plaintiff failed to properly plead the claim in the alternative. Second, they argue that, because Plaintiff's payment expectation arose entirely from the express contract, not an implied one, the quantum meruit claim is "inextricably entangled" with the breach of contract claim.

Finally, Defendants claim that Plaintiff did not confer any measurable benefit to them, merely an opportunity to benefit.

To establish a claim for quantum meruit, also known as unjust enrichment, a plaintiff must show three elements: (1) plaintiff conferred a measurable benefit to defendant, (2) defendant knowingly and voluntarily accepted the benefit, and (3) the benefit was not given gratuitously. <u>See</u> <u>Booe v. Shadrick</u>, 322 N.C. 567, 570, 369 S.E.2d 554, 556 (1988). Notably, a claim for quantum meruit can only exist in the absence of an enforceable, express contract. <u>Id.</u>(citing <u>Concrete Co. v. Lumber Co.</u>, 256 N.C. 709, 124 S.E.2d 905 (1962)). Therefore, where a plaintiff also alleges breach of contract, quantum meruit must be presented as an alternative pleading.

In the present case, Defendants first argue that Plaintiff's claim fails to meet the alternative pleading standard set forth in Fed. R. Civ. P. Rule 8(e)(2). "[U]nder Rule 8(e)(2), a party may plead alternatively or hypothetically within a single count or defense, or assert separate claims or defenses in an alternative or multiple manner." Charles A. Wright & Arthur R. Miller, <u>Federal Practice and Procedure</u> § 1282 (citing <u>Sherman v. Johnson & Towers Baltimore, Inc.</u>, 760 F. Supp. 499 (D. Md. 1990)). Citing the Seventh Circuit case of <u>Holman v. Indiana</u>, 211 F.3d 399 (7th Cir. 2000), Defendants contend that a "complaint must use words from which it can be reasonably inferred that plaintiff is pleading in the alternative." Because Count 6 of the amended complaint lacks words implying alternative pleading, Defendants request dismissal.

It is not clear that Rule 8(e)(2) requires the level of technical specificity demanded in <u>Holman</u>. No other circuit, including our own, has followed the Seventh on this point. Finally, Plaintiff has filed a motion to amend the complaint to specifically allege the quantum meruit claim in the alternative. (Docket No. 40.)[2] The granting of that part of the motion imposes no hardship or prejudice on Defendants and will be granted, thus, ending that part of the controversy.

Defendants' second ground for dismissal is equally unpersuasive. They argue that Plaintiff's claim is deficient because it never alleged that it had any expectation of payment outside of the express contract. Defendants are correct that "'quantum meruit claims require a showing that both parties understood that services were rendered with the expectation of payment.'" <u>Wing v. Town of Landis</u>, 165 N.C. App. 691, 693, 559 S.E.2d 431, 433 (2004)(quoting <u>Scott v. United Carolina Bank</u>, 130 N.C. App 426, 429, 503 S.E.2d 149, 152 (1998)). In claiming that Plaintiff's expectations were strictly contract-based, however, Defendants expressly ignore the nature of alternative pleadings. Plaintiff bases its quantum meruit claim on the assumption that its contract claim will not succeed. In this event, Plaintiff's expectation of payment for its services does not simply disappear;

---

[2] Plaintiff also, in the same motion, wants to amend the complaint to include all materials contained in the more definite statement. This part of the motion is not well taken and will be denied.

-10-

rather, it becomes one of unjust enrichment. Thus, Defendants'
motion on this ground should be denied.

In their third and final basis for dismissal, Defendants argue
that "[t]he Amended Complaint has no well-pleaded facts alleging an
actual benefit accrued to [Defendants]." (Doc. No. 37 at 8.) They
argue that the complaint merely states that Plaintiff provided
information and services that were <u>intended</u> to benefit Defendants
if Defendants chose to market the technology. Defendants then
claim there was no benefit because they chose not to so market.

While Defendants cite <u>Wing</u> for the proposition that "[q]uantum
meruit does not apply where no benefit accrues to the party from
whom compensation is sought," 165 N.C. App. at 694, 599 S.E.2d at
434 (citations omitted), the context of this rule makes all the
difference. Specifically, the <u>Wing</u> court explicitly stated that
the plaintiff in that case had no expectation of payment, nor had
it rendered, or the defendant accepted, any actual services. In
contrast, in this case, Plaintiff alleges it rendered services
which Defendants accepted. In fact, for a time, Defendants
allegedly even made payments for those services to Plaintiff in
accordance with the unexecuted licensing agreement. The issue
seems to be whether Defendants must pay for Plaintiff's continued
services after these payments ceased. Viewed in this light, it is
not clear that this is a quantum meruit issue at all rather than
yet another breach of the letter of intent. However, to the extent
that Defendants' failure to fully pay for Plaintiff's services
falls under the unexecuted licensing agreement, it remains a

-11-

separate and viable quantum meruit claim should it ultimately be determined there was not any contract with respect to the licensing agreement.

In any event, Plaintiff simply does not allege, as Defendants contend, that it conferred an intended benefit to Defendants. Instead, the complaint states that Plaintiff provided non-gratuitous services which Defendants knowingly accepted. North Carolina cases hold that a plaintiff may recover in quantum meruit "for the reasonable value of services rendered to and accepted by a defendant." Robinson, Bradshaw & Hinson, P.A. v. Smith, 129 N.C. App. 305, 315, 498 S.E.2d 841, 849 (1998)(citing Ellis Jones, Inc. v. Western Waterproofing Co., Inc., 66 N.C. App. 641, 647, 312 S.E.2d 215, 218 (1984)); see also Pritchett & Burch, PLLC v. Boyd, 169 N.C. App. 118, 609 S.E.2d 439 (2005). In fact, many cases, including Pritchett & Burch, even define quantum meruit as "a measure of recovery for the reasonable value of services rendered." 609 S.E.2d at 443. Thus, the real question becomes what, if anything, was the reasonable value of Plaintiff's technical services to Defendants. This is a question of fact, not of law.

## Negligence

In its seventh claim for relief, Plaintiff asserts that Defendants failed to exercise proper care in marketing Plaintiff's product in accordance with the parties' letter of intent. Plaintiff's initial brief in opposition to Defendants' motion to dismiss characterizes this claim as "negligent performance of contractual obligations." As the Court pointed out in the hearing

-12-

on Defendants' motion, however, a failure to perform under a contract is not an injury independent of a breach of contract claim. Nevertheless, the Court granted Plaintiff's request to provide supporting case law for its negligence theory. (Tr. at 68-72.)

Plaintiff, ostensibly unable to locate support for its claim, misused its opportunity by briefing the issue to assert an entirely new negligence theory: "negligent conversion." Plaintiff never mentioned this theory or supporting case law in its complaint, its prior briefs, or even during the course of the hearing before this Court. Plaintiff may not introduce a new cause of action at this late point in the proceedings by argument in a brief, and without permission of the Court. As such, Plaintiff's seventh claim for relief should be dismissed.

### Conversion

In Count 8, Plaintiff alleges that Defendants "obtained custody and control" of its valuable business information, including "proprietary and confidential documents," after the parties signed their letter of intent. Because Defendants "have retained custody and control of such information and documents," Plaintiff asserts a claim of conversion.

"'Conversion is defined as: (1) the unauthorized assumption and exercise of the right of ownership; (2) over the goods or personal property; (3) of another; (4) to the exclusion of the rights of the true owner.'" Eley v. Mid/East Acceptance Corp. of N.C., Inc., 171 N.C. App 368, 371, 614 S.E.2d 555, 558

-13-

(2005)(quoting <u>Estate of Graham v. Morrison</u>, 168 N.C. App. 63, 72, 607 S.E.2d 295, 302 (2005)).

> The essence of conversion is not the acquisition of property by the wrongdoer, but a wrongful deprivation of it to the owner . . . and in consequence it is of no importance what subsequent application was made of the converted property, or that defendant derived no benefit from the act. The general rule is that there is no conversion until some act is done which is a denial or violation of the plaintiff's dominion over or rights in the property.

<u>Lake Mary Ltd. Partnership v. Johnston</u>, 145 N.C. App. 525, 531, 551 S.E.2d 546, 552 (2001)(citations omitted). Thus, the tort of conversion involves two essential elements: ownership by the plaintiff and conversion by the defendant. <u>Id.</u> Where, as here, the defendants received the materials in question pursuant to a contract, conversion requires more than mere possession.

> [D]emand and refusal are necessary to the existence of the tort. When demand is made, an absolute, unqualified refusal to surrender, which puts the plaintiff to the necessity of force or a lawsuit to recover his own property, is of course a conversion.

<u>Hoch v. Young</u>, 63 N.C. App. 480, 483, 305 S.E.2d 201, 203 (1983)(citing Prosser, <u>The Law of Torts 4th</u>, § 15 at pp. 89-90 (1971)).

Unfortunately, Plaintiff's amended complaint contains no allegation that Plaintiff demanded the return of its documents or other proprietary information, let alone an allegation that Defendants refused such a demand. As such, Plaintiff's conversion claim is deficient on its face for failing to allege an essential element.

-14-

The claim is also deficient for an additional reason. As Defendants correctly point out in their brief, only tangible property is subject to conversion under North Carolina law. The description of property in the complaint, however, commingles tangible and intangible property by asserting that Defendants acquired "proprietary technical and business information," some, but not all, of which was memorialized in document form. (Compl. ¶ 111.) There is no way for the parties or the Court to discern which part of Plaintiff's property was actually subject to conversion, that is, capable of being returned upon demand.

The Court also notes that Plaintiff's citation of authority regarding the applicability of conversion to intangible property is entirely inapposite to the present situation. The California cases cited by Plaintiff conclude that intangible materials are subject to conversion, if at all, through their association or reduction to tangible forms or simply by depriving the plaintiff of the use of his confidential information. See Kremen v. Cohen, 337 F.3d 1024 (9th Cir. 2003). Plaintiff fails to allege that either of these situations exist in the present case. Further, even if Kremen could perhaps be read to suggest in dicta that intangible property may be converted, Plaintiff's claims are confined by North Carolina law. This Court may not create new state law, and current law clearly indicates that North Carolina limits the forms of property subject to conversion. See, e.g., Norman v. Nash Johnson & Sons' Farms, Inc., 140 N.C. App. 390, 414, 537 S.E.2d 248, 264

(2000)(intangible interests "such as business opportunities and expectancy interests" are not subject to conversion claims).

At this stage, the claim is defective for the above stated reasons and should be dismissed. Whether Plaintiff will attempt to correct the defect by a separate motion to amend is not a basis for not granting the motion to dismiss.

### Fraud

In the next two counts (9 & 10) of the amended complaint, Plaintiff claims that Defendants fraudulently misrepresented their intention to go forward with the marketing of Plaintiff's product, and misrepresented their intentions in the Tolling Agreement. Specifically, Plaintiff asserts that the alleged misrepresentations occurred at the time the parties executed the letter of intent and again when they entered a tolling agreement in March 2005. At the hearing on Defendants' motion, the Court instructed Plaintiff to provide a more definite statement as to each of its fraud counts. Plaintiff subsequently submitted a combined statement as to both claims.

To allege a claim for fraud in North Carolina, a party must plead five "essential elements: (1) a false representation or concealment of a material fact, (2) that was reasonably calculated to deceive, (3) which was made with the intent to deceive, (4) that did in fact deceive, and (5) resulted in damage." Breeden v. Richmond Community College, 171 F.R.D. 189, 194 (M.D.N.C. 1997)(citations omitted). Not only must these elements be pled, but under Fed. R. Civ. P. 9(b) "the circumstances constituting

-16-

fraud or mistake shall be stated with particularity . . . ."
Courts construe this to mean that plaintiffs must set out the
"'time, place, and contents of the alleged fraudulent
misrepresentation, as well as the identity of each person making
the misrepresentation and what was obtained thereby.'" Id. at 195
(quoting Liner v. DiCresce, 905 F. Supp. 280, 287 (M.D.N.C. 1993)).

Where fraud allegations are raised in what is essentially a
breach of contract case, the Court of Appeals for the Fourth
Circuit has warned that an "attempt to turn a contract dispute into
a tort action with an accompanying punitive dimension is
inconsistent both with North Carolina law and sound commercial
practice." Strum v. Exxon Co., U.S.A., 15 F.3d 327, 329-30 (4th
Cir. 1994). The mere failure to carry out a promise in a contract
cannot support a fraud action. Id. at 331.

In the present case, Plaintiff's allegations of fraud lack
both the requisite specificity of Rule 9(b) and the assertions of
egregious behavior necessary to take a contract dispute into the
realm of tort. Notably, Plaintiff's more definite statement as to
his fraud claims does little more than reassert the contentions in
the complaint itself.[3] While Plaintiff alleges that Defendants

_____

[3]Plaintiff's failure to provide greater specificity is particularly
surprising given the instructions this Court relayed to counsel during the March
2007 hearing. At that time, the Court not only made clear that Plaintiff's
existing pleadings were insufficient, but also told Plaintiff's counsel how to
correct the problem, stating:
    What was the material misrepresentation? Who said it? When did
    they say it? Where were they when they said it? Who heard it? . .
    . [T]hose would be the minimum of what's going to be required and
    then I would look at the fraud claim, but right now it is
                                                      (continued...)

made "a number of representations, either false or made in reckless disregard for their truth or falsity," it identifies very few representations at all,[4] and fails to sufficiently explain why they were false, who made them, or when and where they were made. Instead, Plaintiff simply claims that Defendants "feign[ed] interest in plaintiff's proprietary process" while "deliberately refrain[ing] from obtaining approval" for the licensing agreement. Variations of these conclusory allegations appear in virtually every paragraph of Plaintiff's more definite statement. Many of Plaintiff's allegations simply amount to assertions that Defendants did not act in good faith.

The closest Plaintiff comes to actually identifying a specific statement comes when Plaintiff parrots phrases from the parties' letter of intent and claims Defendants did not intend to keep their promises. In particular, Plaintiff contends that Defendants never fulfilled their agreements to "avoid time delays and to expedite the introduction of technology," to "make every effort to expedite

---

[3](...continued)
unquestionably deficient. . . . The who, where, what, when has to be identified for every single misrepresentation that was made; and you also have to at that same time set out and show why that was a materially false statement.
(Tr. at 73.) Despite these explicit directions, Plaintiff's "more definite statement" merely realleges the allegations in the complaint and makes no attempt to answer the questions posed by the Court. It is lacking in effort and substance.

[4]In one instance, Plaintiff alleges Defendants' agents told it Defendant Bayer had authority to sign the agreement, and this was not accurate or true. This allegation contains the seed of a misrepresentation within it, but standing alone is simply a meaningless conclusion. This defect arises from Plaintiff's failure to set out in detail the "who, what, where, and why" specifics necessary to plead a fraud claim.

-18-

the review and final approval" of the licensing agreement, and to "begin immediately to develop the marketing, development and research strategy as if the Agreement has been finalized." Plaintiff then conclusorily alleges Defendants had no intention to abide by the promises. What Plaintiff fails to do is to provide specific facts to support this premise. Mere allegations of "[u]nfulfilled promises or statements as to future events typically do not constitute material facts that will support a fraud claim." Glaser v. Enzo Biochem, Inc., 126 Fed. Appx. 593, 600 (4th Cir. 2005). Instead, the appropriate cause of action is breach of contract.

Plaintiff's claims are reminiscent of those in Strum, 15 F.3d at 330, where the Fourth Circuit applied these principles and found that none of the plaintiff's fraud allegations constituted viable independent tort claims. In both cases, the plaintiffs alleged that the defendants fraudulently induced them into entering service agreements. See id. In neither case, however, was the defendants' breach of contract accompanied by an "aggravating element such as malice or recklessness." And, in alleging such elements, the pleader must present more than generalities or conclusory allegations. Id. As the Fourth Circuit pointed out,

> misjudgment alone is not fraudulent inducement. At most, Strum may have been able to prove that Exxon did not carry out a promise, not that Exxon never had any intention of doing so. The mere failure to carry out a promise in contract, however, does not support a tort action for fraud.

Id. (citing <u>Hoyle v. Bagby</u>, 253 N.C. 778, 117 S.E.2d 760 (1961); <u>In re Baby Boy Shamp</u>, 82 N.C. App. 606, 347 S.E.2d 848, 853 (1986)).

The present case encounters the same fatal flaw. While Plaintiff repeatedly alleges that Defendant Bayer had no intention of performing in accordance with the parties' letter of intent, the pleadings provide no support for this bald, conclusory assertion. They simply show that Bayer did not comply with the terms of the agreement. As such, Plaintiff pleads no more than a breach of contract, and its fraud claim should be dismissed.

Plaintiff's claim of fraud with respect to the parties' settlement negotiations is equally speculative. Again, Plaintiff's more definite statement fails to cure the Rule 9(b) pleading defect in its complaint. In fact, the allegations as to the tolling agreement are, if anything, weaker than those regarding the letter of intent. Neither the complaint nor the more definite statement identify any statements either from the agreement itself or the surrounding negotiations, let alone ones that could be construed as misrepresentations. Therefore, Plaintiff's claim of fraud in the settlement negotiations is wholly unsupported and merits dismissal.

### Misappropriation of Trade Secrets

Section 66-152 of the North Carolina General Statutes defines the misappropriation of a trade secret as "acquisition, disclosure, or use of a trade secret of another without express or implied authority or consent . . . ." In the present case, the parties do not dispute that the information Defendants received from Plaintiff constituted a trade secret. The sole issue is whether the

-20-

complaint sufficiently alleges that Defendants misappropriated that information.

In Count 11 of the amended complaint, Plaintiff claims that it "provided valuable trade secrets and proprietary technical and business information" to Defendants in reliance on Defendants' promise to develop and market Plaintiff's product. It continues that the information was released based on representations that the letter of intent was a binding agreement. Plaintiff further claims that it suffered a detriment as a result of its reliance. Defendants, in turn, contend that they received the contested information pursuant to a disclosure agreement; thus, there was no misappropriation. Defendants also point out that the complaint fails to allege that they used or disclosed any of the information Plaintiff provided.

To avoid this, Plaintiff attempts a little sleight of hand. In its brief, it argues that most of the information was released, not under the initial disclosure agreements, but in furtherance of agreements reached during the following months. (Pl.'s Br. 16.) Yet, by this, it would seem that Plaintiff does not dispute that it provided confidential information to Defendants pursuant to a contract or agreement. In fact, it specifically asserts that there are no disputed underlying facts as to this claim. (Pl.'s Br. 15.) Plaintiff apparently challenges Defendants' assertion that there can be no misappropriation where a defendant receives trade secrets pursuant to a contract. However, it provides no legal support for the position. It would seem, perhaps, that Plaintiff really

-21-

intends to argue that Defendants fraudulently induced it to reveal its trade secrets by signing the letter of intent. To the extent that this is the case, Plaintiff's remedy lies in fraud, not trade secrets. But, as noted earlier, Plaintiff does not sufficiently allege fraud. Therefore, Plaintiff's eleventh claim for relief should be dismissed under Rule 12(b)(6).

### Unfair and Deceptive Trade Practices

Plaintiff's final remaining claim (Count 12) alleges violations of the North Carolina Unfair and Deceptive Trade Practices Act ("UDTPA"), N.C.G.S. § 75-1.1., et seq. The elements of an unfair trade practices claim are that (1) the defendants committed an unfair or deceptive act or practice; (2) in or affecting commerce; and (3) that the plaintiff was injured thereby. Dalton v. Camp, 353 N.C. 647, 656, 548 S.E.2d 704, 711 (2001). Additionally, the Court pointed out in the hearing on Defendants' motion that a plaintiff must ordinarily show some type of misrepresentation to proceed on a claim under the UDTPA. (Tr. at 90); see also Business Cabling, Inc. v. Yokeley, __ N.C. App. __, 643 S.E.2d 63, 64 (2007)(to recover under the UDTPA, a plaintiff must show that he or she "detrimentally relied upon a statement or misrepresentation and he or she suffered actual injury as a proximate result of defendant's deceptive statement or misrepresentation").

As discussed above in relation to Plaintiff's fraud claims, neither the amended complaint nor Plaintiff's more definite statement specify in sufficient detail any non-conclusory deceptive

-22-

statements which might spare this claim from dismissal. In fact, the more definite statement as to Plaintiff's UDTPA claim does nothing more than repeat verbatim the insufficient conclusory allegations of the fraud claim where Plaintiff contends that, because Defendants never eventually signed the licensing agreement, this shows they never intended to sign it. These assertions do not suffice to constitute misrepresentation or, in other words, the type of "substantial aggravating circumstances" required to demonstrate unfair trade practices in a contract setting. For this reason, Plaintiff's claim should be dismissed.

**IT IS THEREFORE ORDERED** that Plaintiff's motion to amend the complaint (docket no. 40) is granted to the extent that it requests to plead the quantum meruit assertions in Count 6 in the alternative, but is otherwise denied.

**IT IS RECOMMENDED**, as a result of both the decisions set out in the above recommendation and those made in the hearing, that Defendant's motion to dismiss (docket no. 21) be granted as to Counts 7, 8, 9, 10, 11, 12, and 13 of the amended complaint and denied as to Counts 3 and 6. It is further recommended that the contract claims in Counts 2, 4, and 5 be dismissed for being substantively subsumed and incorporated in Count 3.


_____
**United States Magistrate Judge**

November 29, 2007


-23-